WEST VIRGINIA BOARD OF REGENTS, *a corporation*

*v.*

FAIRMONT, MORGANTOWN AND PITTSBURGH RAILROAD
COMPANY, *a corporation, et al.*

(No. 13192)

Submitted April 25, 1972.          Decided June 6, 1972.

*Herschel Rose, James D. Nash, Jr.,* for plaintiffs in error.

*Mike Magro, Jr.,* for defendant in error.

CARRIGAN, JUDGE:

West Virginia Board of Regents, hereinafter referred to as Regents, instituted a proceeding in eminent domain in the Circuit Court of Monongalia County, West Virginia, seeking to acquire certain surface, rights of way and aerial easements for a personal rapid transit system over land in Monongalia County owned by Fairmont, Morgantown and Pittsburgh Railroad Company and in the possession of The Baltimore and Ohio Railroad Company by virtue of certain agreements between the two railroad companies. Both railroad companies are parties to this proceeding, and are hereinafter referred to as Railroads.

On December 23, 1971, Regents served notice on Railroads that on January 11, 1972, it would move the aforesaid Circuit Court for right of immediate entry upon the lands and easements described in said notice and as shown on maps or plats attached to said notice, and for the appointment of commissioners to ascertain just compensation to Railroads for such taking, setting forth that such taking was necessary for the use and purposes of Regents in the management of the business and affairs of West Virginia University for the construction of a personal rapid transit system connected with the educational affairs of said University.

On January 11, 1972, all parties appearing, by counsel, Regents filed its petition and moved the Circuit Court for appointment of commissioners and the right of immediate entry pursuant to the notice of December 23, 1971.

Regents' petition sets forth that it is a corporate body politic created by the statutes of this State, and as such has the power, privileges, rights and duties of acquiring, owning and maintaining the physical facilities of West Virginia University in Monongalia County, West Virginia. The petition describes the parcels and easements proposed to be taken and also has plats attached thereto showing the parcels and easements with relation to the railroad and other properties. The court denied Regents' motion

and gave Railroads until January 25, 1972, to demur or otherwise plead to challenge the sufficiency in law of Regents' petition.

Railroads' demurrer was argued and the court overruled the same, and found Regents' petition sufficient and gave Regents the right of immediate entry, by an order entered January 28, 1972. The trial court gave Railroads 60 days to file pleas or pleadings. This proceeding is now before us on a motion to affirm the trial court's order entered on January 28, 1972.

The two issues raised in this case are: (1) Is Regents' petition sufficient to show it is entitled to acquire the property of Railroads by eminent domain; and (2) were Railroads entitled to answer the petition, after their demurrer was overruled, before Regents were granted a right of immediate entry?

The trial court apparently believed that this order of January 28, 1972, was not appealable. This Court has previously held in *Monongahela Power Company v. Shackelford*, 142 W.Va. 760, 98 S.E.2d 722 (1957), that an order such as that entered in the present case on January 28, 1972, is an appealable order.

Railroads' demurrer challenging the sufficiency of Regents' petition sets forth numerous grounds, the substance of which is: That Regents lacks authority to condemn land already devoted to public use; that Regents requires special legislative authority to condemn land; that Regents is not authorized to operate a transit system not for exclusive use of West Virginia University; that Regents' petition does not allege sufficient facts to show use of land and easements they seek is for public use; and that property and easements sought are not described with reasonable certainty.

By Chapter 89, Acts of Legislature, 1947, contained in Section 1a, Article 11, Chapter 18, Code of West Virginia, 1931, as amended, the control of West Virginia University

and all rights and powers formerly exercised by the state board of control was transferred to the board of governors of West Virginia University.

In *Morgantown v. Ducker*, 153 W.Va. 121, 168 S.E.2d 298 (1969), this Court held that the board of governors of West Virginia University was an arm of the State of West Virginia. The power of eminent domain is an inseparable incident of sovereignty. Such power is only restricted by the provisions of Article III, Section 9, of the West Virginia Constitution requiring payment of just compensation for the property taken.

Chapter 130, Acts of Legislature, 1969, now contained in Article 26, Chapter 18, Code of West Virginia, 1931, as amended, and effective July 1, 1969, transferred supervision and control of all colleges and universities to the West Virginia board of regents, and section 11 of said article and chapter specifically transfers the authority formerly held by the board of governors to the board of regents as they relate to West Virginia University.

Chapter 139, Acts of the Legislature, 1969, now contained in Article 23, Chapter 18, Code of West Virginia, 1931, as amended, defines the additional powers of the governing board of state institutions of higher education. Section 3 of said article and chapter specifically authorized said board to acquire by condemnation land and buildings for use and benefit of institutions under its control, and provides such proceedings shall be governed by chapter fifty-four (Eminent Domain). Paragraph (k), Section 2, Article 1, Chapter 54, Code of West Virginia, 1931, as amended, does not limit or restrict the exercise of eminent domain by a body politic for a public use.

Therefore the Regents as an arm of this State, and as authorized by statutes has authority to acquire land and easements by condemnation without special legislative authority so long as the use is for a public purpose of the state. Thus in this case, the board of regents, may condemn property of a utility regardless of its use by such utility

where the use is connected with the educational facilities of West Virginia University. The right of the state to condemn is an attribute of sovereignty, while the power of utilities to condemn is granted by legislative act and may be revoked by legislative act. The right of the state is therefore superior to that of the utility.

Railroads cite numerous cases as authority for their view that a special legislative act was required for action of board of regents; however, these cases involve a contest between two utilities and not, as here, between the state and a utility.

Regents' petition alleges that the land and easements sought by Regents are for construction of a personal rapid transit system in connection with West Virginia University. Under the above-mentioned statutes we find such allegations sufficient to show the public use of the property in connection with West Virginia University.

Both the notice and petition filed by Regents and served on Railroads have maps or plats attached showing the real estate sought to be acquired as well as the location of the aerial easements, as they relate to Railroads' property, and also state that any structure within 18 feet horizontally of the center line of railroad tract will be at least 23 feet vertically from top of higher rail of the tracks. This we believe describes the real estate sought to be acquired with reasonable certainty.

Railroads further complain that they should have been permitted to answer after the demurrer was overruled, and before Regents were granted a right of immediate entry. As authority for this Railroads cite *Brooke Electric Co. v. Beall,* 96 W.Va. 637, 123 S.E. 587 (1924) and *Brooke Electric Co. v. Paull,* 96 W.Va. 645, 123 S.E. 590 (1924).

It is noted that these cases were decided prior to the 1931 revision of the West Virginia Code, which inserted Section 14 in Article 2, Chapter 54, and which authorized a right of immediate entry on land sought to be condemned by the State of West Virginia.

The Circuit Court being correctly satisfied the Regents sought property of Railroads for a public use, in accordance with said Section 14, was authorized to grant Regents the right of immediate entry on Railroads' property, without any bond being given.

Railroads were not denied the right to answer, for notwithstanding Section 56, Article 4, Chapter 56, Code of West Virginia, 1931, as amended, which allows fifteen days to answer upon overruling of a demurrer, the Circuit Court allowed sixty days for Railroads to thereafter answer or otherwise plead.

For the foregoing reasons the motion to affirm is granted and the order of the Circuit Court of Monongalia County entered on January 28, 1972, is affirmed.

*Affirmed.*